

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
Greensboro Division

DYLAN GREY WHITESELL, individually and as
parent and next friend of I.J.W., F.C.W., and E.W., minors; and ANGELA VOLK,

Plaintiffs,

v.

SURRY COUNTY, NORTH CAROLINA;
SHARON SCHUENEMAN, individually as
Director of the Surry County Department
of Social Services;
SAMANTHA SEBASTIAN, individually as
Social Worker, Surry County Department
of Social Services; and JAMIE SHATLEY,
individually as Social Worker, Surry
County Department of Social Services,

Defendants.

Civil Action No.: _26CV552_____

**VERIFIED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

42 U.S.C. § 1983
Fourth Amendment
Fourteenth Amendment

**JURY TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE**

### I. INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution by employees and officials of the Surry County Department of Social Services ("DSS") acting under color of state law.

2. Over a period beginning March 22, 2025 and extending through March 2, 2026, Defendants subjected Plaintiffs to a systematic pattern of unconstitutional conduct

including: coerced entry into purportedly voluntary safety agreements obtained through explicit threats of immediate child removal; warrantless entry into and search of a private residence through third-party consent while the primary resident was absent; removal of three minor children from parental custody without prior judicial authorization and in the absence of exigent circumstances; administration of a high-risk polypharmacy regimen to a minor child over documented parental objection and without valid legal consent; deliberate misrepresentation of judicial authority by a final policymaker; extrajudicial restriction on Plaintiffs' constitutional right to travel; and the submission of a sworn affidavit containing a materially false statement to a state judicial tribunal.

3. On March 2, 2026, the Honorable William F. Southern III, District Court Judge, Surry County, North Carolina, entered a Juvenile Order declaring all prior DSS custody orders in File Nos. 25JA001086, 25JA001087, and 25JA001088 "null and void, and of no effect." The children had been in DSS custody for approximately 192 days under orders a court subsequently voided entirely.

4. On February 2, 2026, DSS Director Sharon Schueneman wrote to Plaintiff Dylan Whitesell from her official county government email address acknowledging the misconduct of Social Worker Samantha Sebastian and confirming Sebastian's departure from the agency. This written acknowledgment by a Monell policymaker, made in direct response to a formal grievance documenting the

constitutional violations alleged herein, forms a central basis for municipal liability in this action.

5.  Plaintiffs bring this action to vindicate their constitutional rights, to obtain just compensation for the profound and irreparable harms they have sustained, and to deter the recurrence of the unconstitutional practices documented herein.

## II. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction). This action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

7.  This Court has supplemental jurisdiction over the state law claims asserted in Counts X and XI pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

8.  Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Surry County, North Carolina, which lies within this district, and Defendants reside and conduct official activities within this district.

9. Should Plaintiffs obtain counsel and prevail on their federal civil rights claims, Plaintiffs reserve all rights available under 42 U.S.C. § 1988 with respect to attorney's fees and costs.

### III. PARTIES

**A. Plaintiffs**

10. Plaintiff DYLAN GREY WHITESELL is an adult resident of Ararat, Surry County, North Carolina. He is the biological father of minor children I.J.W., F.C.W., and E.W. He brings this action individually and as parent and next friend of his three minor children for claims arising from violations of their constitutional rights.

11. Plaintiff ANGELA VOLK is an adult resident of 537 Fisher Valley Road, Dobson, North Carolina 27017. She is the domestic partner of Plaintiff Dylan Whitesell and served as a caretaker of the minor children during the relevant period. She brings this action individually for violations of her Fourth and Fourteenth Amendment rights arising from the coerced safety agreements and the warrantless search of her private quarters.

12. Minor Plaintiff I.J.W. was an infant during the period of the constitutional violations alleged herein. He is brought as a party by his father and next friend, Dylan Grey Whitesell.

13. Minor Plaintiff F.C.W., born in 2017, is a minor child who was subjected to an unauthorized polypharmacy regimen during the period of DSS custody. He is brought as a party by his father and next friend, Dylan Grey Whitesell.

14. Minor Plaintiff E.W. is a minor child who was removed from parental custody during the period of constitutional violations alleged herein. He is brought as a party by his father and next friend, Dylan Grey Whitesell.

**B. Defendants**

15. Defendant SURRY COUNTY, NORTH CAROLINA is a governmental entity organized under the laws of North Carolina. Surry County operates the Surry County Department of Social Services, employs the individual Defendants, and is liable pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), for the constitutional violations alleged herein resulting from the official policies, customs, and practices of its policymakers, including Director Schueneman.

16. Defendant SHARON SCHUENEMAN is and was at all relevant times the Director of the Surry County Department of Social Services, acting under color of state law. She is sued in her individual capacity. As Director, she is a final policymaker for Surry County DSS within the meaning of Monell. She may be served at Surry County DSS, 118 Hamby Road, Dobson, North Carolina 27017.

17. Defendant SAMANTHA SEBASTIAN was at all relevant times a Social Worker employed by Surry County DSS, acting under color of state law. She is sued in her

individual capacity. Upon information and belief, she is no longer employed by Surry County DSS, as acknowledged by Director Schueneman in her February 2, 2026 written communication. She may be served at her last known address: 4174 Vestal Road, Jonesville, North Carolina 28642.

18. Defendant JAMIE SHATLEY is and was at all relevant times a Social Worker employed by Surry County DSS, acting under color of state law. She is sued in her individual capacity. She may be served at Surry County DSS, 118 Hamby Road, Dobson, North Carolina 27017.

## IV. STATEMENT OF FACTS

### A. Background and Initial DSS Contact (March–April 2025)

19. At all relevant times, Plaintiff Dylan Whitesell resided at 169 Misty Creek Trail, Ararat, Surry County, North Carolina 27007 with Plaintiff Angela Volk and his three minor children, I.J.W., F.C.W., and E.W.

20. On or about March 20, 2025, Defendant Shatley initiated contact with Plaintiff Dylan Whitesell regarding the commencement of a safety assessment pursuant to a report received by Surry County DSS.

21. On March 22, 2025, Defendant Shatley completed a North Carolina Safety Assessment (DSS Form 5231) for the Whitesell household. The assessment evaluated sixteen indicators of immediate safety. The assessment concluded that the household was "Safe with a Plan"—the intermediate classification—not

"Unsafe." The assessment did not check the "Unsafe" box or recommend removal of any child. None of the sixteen immediate safety indicators was marked affirmatively in a manner that would support a finding of imminent danger requiring removal.

22. On the same date, March 22, 2025, Defendant Shatley presented Plaintiff Dylan Whitesell and Plaintiff Angela Volk with a Temporary Parental Safety Agreement ("TSPA") for their signatures. Defendant Shatley explicitly informed Plaintiffs that if they did not sign the TSPA, their children would be immediately placed in foster care. This coercive threat was made notwithstanding that Defendant Shatley's own completed safety assessment had not classified the household as "Unsafe" and had not recommended removal.

23. The TSPA acknowledges in its own text that participation "is not an admission of child abuse or neglect" and that the agreement is voluntary in nature. The agreement was not voluntary. It was obtained under explicit governmental coercion and threat of immediate child removal by a state actor without judicial authorization. Consent obtained through such governmental coercion is not legally valid consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Troxel v. Granville, 530 U.S. 57 (2000).

24. As a direct and proximate result of the coerced TSPA and the conditions it imposed—including requirements that restricted Plaintiffs' presence in their own

home—Plaintiffs Dylan Whitesell and Angela Volk were rendered homeless within days of signing the agreement. On March 29, 2025, Plaintiff Dylan Whitesell sent a text message to Defendant Shatley documenting that he and Angela Volk had been sleeping in a tent in the woods for days with nowhere to go, that he had missed F.C.W.'s school field trip to the zoo, and that infant I.J.W. was beginning to pull himself up on furniture while his father was unable to be present. This contemporaneous communication was sent directly to the DSS social worker who imposed the conditions that caused the homelessness.

25. A second North Carolina Safety Assessment was completed on or about April 14, 2025. This assessment similarly concluded that the household was "Safe with a Plan," not "Unsafe." A second TSPA was executed under the same coercive circumstances. The second TSPA imposed conditions including supervised visitation requirements, restrictions on where the children could reside, and conditions governing the household's composition.

26. Plaintiffs were rendered homeless throughout the period of the safety agreements, from approximately March 22, 2025 through the beginning of summer break in approximately June 2025, when Plaintiffs were permitted to return to the family home. The homelessness was a direct and proximate result of DSS's coercive conduct.

27. During the summer of 2025, the family was reunited at the family home without any documented incident, new safety concern, or changed circumstances. No exigent event occurred during the summer period that had not been present before. The uneventful summer reunification further undermines any contention that ongoing emergency conditions existed in the household.

**B. The August 22, 2025 Events—Warrantless Search and Pre-Order Removal**

28. On August 22, 2025, at approximately 4:00 PM, Defendant Sebastian arrived at Plaintiffs' residence at 169 Misty Creek Trail, Ararat, North Carolina 27007. Plaintiff Dylan Whitesell was not present. He had collected his children from the school bus and taken them fishing. He had no cell phone service and no knowledge that Defendant Sebastian was at his home.

29. Defendant Sebastian, finding Plaintiff absent, remained at the property. She persuaded Plaintiff's father—a third-party occupant of the residence—to allow her entry into the home. Using that third-party access, Defendant Sebastian entered the private residence and proceeded to search Plaintiff Dylan Whitesell's private bedroom and the children's private bedrooms. At the time of this search, Defendant Sebastian possessed no warrant, no court order, and no valid judicial authorization of any kind. Plaintiff Dylan Whitesell had not consented to the search and was not present to do so. A third party's consent to entry does not

authorize the warrantless search of an absent resident's private quarters. Georgia v. Randolph, 547 U.S. 103 (2006).

30. At approximately 6:19 PM, while Plaintiff Dylan Whitesell remained absent and unreachable by telephone, communications were made threatening to issue a BOLO (Be On the Lookout) and Missing Child Report on Plaintiff's family vehicles, characterizing the father and children as fleeing. Plaintiff was engaged in a routine family activity—fishing with his children—with no knowledge of Sebastian's presence at his home and no means of receiving communication. No court order existed at this time.

31. Plaintiff Dylan Whitesell and his children returned to the family residence at approximately 8:10 PM. Defendant Sebastian was still present, having waited approximately four hours and ten minutes for Plaintiff's return. At no point during those four-plus hours had Defendant Sebastian obtained a court order authorizing the removal of the children.

32. The four-and-a-half-hour period during which Defendant Sebastian waited at the property establishes, as a matter of objective conduct, the absence of any exigent circumstances justifying warrantless action. Specifically: (a) Defendant Sebastian did not remove the children upon her 4:00 PM arrival; (b) Defendant Sebastian did not seek judicial authorization at any point during the four-plus hours she remained at the property before Plaintiff's return; (c) Defendant Sebastian waited

until Plaintiff returned before taking action; and (d) Defendant Sebastian obtained telephonic judicial authorization—demonstrably available to her throughout the evening—only after the removal had already been executed. This sequence of conduct, independently corroborated by the order's own 11:40 PM notation, the body camera footage, CAD records, and Plaintiff's father's eyewitness account, is objectively inconsistent with any genuine belief that the children faced immediate danger requiring emergency action.

33. At approximately 8:30 PM, Defendant Sebastian removed I.J.W., F.C.W., and E.W. from the family home and from the custody of their father, Plaintiff Dylan Whitesell.

34. Two Surry County Sheriff's deputies were present at the time of removal. Plaintiff Dylan Whitesell directly asked the deputies whether they were present to execute a court order or to keep the peace. The deputies responded that they were there to "keep the peace." This exchange is captured on the deputies' body camera footage, which has been preserved pursuant to a litigation hold served on the Surry County Sheriff's Office by both certified return receipt mail and email.

35. Plaintiff Dylan Whitesell then directly asked Defendant Sebastian to produce the court order she claimed to possess. Defendant Sebastian refused to produce the order and stated that someone would serve it later. This refusal, made in the presence of two sworn law enforcement officers whose own characterization of

their role confirmed no order was being executed at that moment, is direct evidence that no valid court order existed at the time of removal.

36. The Nonsecure Custody Order was subsequently obtained by telephonic approval and signed at 11:40 PM on August 22, 2025—approximately seven hours after Defendant Sebastian's arrival at the residence and approximately three hours after the children were removed. The order's own notation confirms that telephonic approval occurred after removal.

37. The Order for Nonsecure Custody was not filed with the Surry County Clerk of Superior Court until August 25, 2025—three days after the removal.

38. At the time of the August 22, 2025 removal, Defendant Sebastian had access to judicial authorization—the 11:40 PM telephonic approval demonstrates that a judge's designee was reachable that evening. The decision not to obtain judicial authorization before removing the children was a deliberate choice, not a practical necessity. When judicial authorization was readily available and voluntarily foregone, the absence of prior judicial process cannot be constitutionally excused by exigency.

**C. Judicial Proceedings and the Period of Custody**

39. On August 25, 2025, Surry County DSS filed a Juvenile Petition alleging neglect of minor F.C.W., File No. 25JA001087-850, in the General Court of Justice, District

Court Division, Surry County, North Carolina. An Affidavit as to Status of Minor Child was executed by Social Worker Samantha Sebastian.

40. On or about April 14, 2025, the date on which the second Temporary Parental Safety Agreement was executed, Plaintiff Angela Volk made a statement to DSS personnel during a recorded meeting. Upon information and belief, Plaintiff Angela Volk stated words to the effect of: "If I say I did it, will you give me my baby back? I didn't do it, but if I say I did, will you?" This statement contained an express denial—"I didn't do it"—embedded within a rhetorical question about whether a false admission would result in return of her child. The statement, taken in its entirety and in context, was not an admission of wrongdoing. It was an explicit denial accompanied by a rhetorical inquiry reflecting the coercive circumstances Plaintiffs were experiencing at the time the second TSPA was executed.

41. Defendant Sebastian's sworn Affidavit as to Status of Minor Child, executed August 25, 2025, characterized Plaintiff Angela Volk's statement as an admission that she had struck a juvenile's sibling with a broom handle, while omitting entirely the express denial contained within that same statement and the coercive context in which it was made. Upon information and belief, DSS possessed a recording of Plaintiff Volk's complete statement at the time the petition was filed. The selective presentation of a partial statement—excising the express denial and surrounding context while representing the remainder as an affirmative admission

in a sworn judicial filing—constitutes a material misrepresentation by omission. A sworn affidavit that omits material exculpatory context from recorded evidence is no less constitutionally deficient than one containing an outright false statement. Franks v. Delaware, 438 U.S. 154 (1978). Plaintiffs have issued a litigation hold demand on Surry County DSS for this recording and will seek its production in discovery.

42. The DSS's own petition identified Angela Volk—not Plaintiff Dylan Whitesell—as the safety risk and confirmed that she had already vacated the family home by approximately April 25, 2025, approximately four months before the August 22, 2025 removal. This internal inconsistency in the agency's own pleading further undermines the stated basis for the removal.

43. On or about October 16, 2025—approximately seven weeks after the removal—six separate psychiatric diagnoses were added simultaneously to minor F.C.W.'s medical record at a single clinical visit: Attention Deficit Hyperactivity Disorder (combined type), Social Anxiety Disorder, Separation Anxiety, Unspecified Disruptive, Impulse-Control, and Conduct Disorder, and Moderate Episode of Recurrent Major Depressive Disorder. The simultaneous addition of six psychiatric diagnoses at a single visit, occurring seven weeks into state custody, raises serious questions about the adequacy and independence of the clinical evaluation process.

44. Beginning in October 2025 and escalating through January 2026, minor F.C.W. was subjected to a high-risk psychotropic medication regimen by third-party mental health providers operating under the purported authority of DSS custody, including: guanfacine (Tenex) beginning October 24, 2025; divalproex (Depakote) beginning December 31, 2025; clonidine HCl (Kapvay) beginning January 15, 2026; methylphenidate (Concerta) beginning January 18, 2026; aripiprazole (Abilify) with no documented start date; and risperidone. This regimen was administered pursuant to and solely because of DSS's purported custodial authority—authority subsequently declared null and void.

45. The concurrent administration of aripiprazole (Abilify) and risperidone constitutes intraclass polypharmacy—the simultaneous use of two antipsychotic medications from the same drug class—in violation of North Carolina Medicaid Clinical Coverage Policy D-AKIDS, which mandates specific safety monitoring protocols for this combination in minor patients. Those protocols were not followed.

46. Plaintiff Dylan Whitesell documented and communicated his objection to the polypharmacy regimen. His objections were overridden. The medical records list "Kim King" as "Legal Guardian" of F.C.W. Upon information and belief, Kim King is the foster placement caretaker and is not a biological parent, adoptive parent, or court-appointed legal guardian of F.C.W. Her purported authority to consent to F.C.W.'s medical treatment derived solely and entirely from the DSS custody arrangement—custody subsequently declared null and void.

47. Minor F.C.W.'s medical records from Atrium Health document a diagnosis of "Trauma in childhood" with a date noted of April 11, 2025, establishing that a treating provider attributed childhood trauma to the period of DSS involvement. Additional documented diagnoses including Separation Anxiety and Social Anxiety Disorder reflect psychological harm attributable to the constitutional violations alleged herein.

48. On December 15, 2025, Plaintiff Dylan Whitesell filed a formal written complaint with DSS Director Sharon Schueneman and the North Carolina DHHS Civil Rights Division documenting the alleged constitutional violations. Civil rights complaints were also filed with the United States Department of Health and Human Services Office for Civil Rights and the United States Department of Justice Civil Rights Division while the children were still in DSS custody. These filings established that federal and state oversight agencies had actual notice of the ongoing alleged constitutional violations.

**D. Director Misconduct and Administrative Bad Faith (February 2026)**

49. On February 2, 2026, in direct response to Plaintiff Dylan Whitesell's formal grievance titled "FORMAL GRIEVANCE: Misconduct and Coercion by SW Samantha Sebastian," Director Sharon Schueneman responded from her official county government email address: "Thank you Mr. Whitesell. My apologies for anything Ms. Sebastian had done during your case. Ms. Sebastian is no longer

employed by the agency although I will have my Program Manager and Supervisor look into allegations." This written apology, sent from an official county government email address by the final policymaker of Surry County DSS in direct response to a formal grievance documenting the specific constitutional violations alleged herein, constitutes an institutional acknowledgment of misconduct.

50. On February 18, 2026, a recorded conversation took place between Plaintiff Dylan Whitesell and DSS worker Tamrin Linville. During this conversation, Linville conditioned Plaintiff Angela Volk's ability to reside in the family home with the children upon Volk's participation in a DSS case plan, stating: "if she is going to live in the same home as F.C.W. and E.W., then… the whole household needs to attain skills." At the time of this statement, no valid court order existed requiring such compliance. This extrajudicial conditioning of a domestic partner's right to reside in a shared home upon participation in a government services program, without judicial authorization, constitutes an unconstitutional restraint on fundamental liberty interests.

51. On February 24, 2026, Surry County DSS, through its attorney Susan Campbell, voluntarily dismissed the Juvenile Petitions filed on August 25, 2025, without prejudice.

52. On February 26, 2026, at 9:53 AM, Plaintiff Dylan Whitesell served a formal Statement of Declination on Director Schueneman, formally declining any further voluntary in-home services following the agency's dismissal of the petition, on the grounds that the court's jurisdiction over the family had terminated.

53. On February 26, 2026, at approximately 12:21 PM—approximately two and a half hours after receiving the Statement of Declination and two days after her agency had voluntarily dismissed the underlying petition—Director Sharon Schueneman sent an email to Plaintiff asserting that services were "court ordered." This assertion was false. No court order requiring services existed on February 26, 2026. The petition had been dismissed two days earlier. Director Schueneman's deliberate misrepresentation of judicial authority to compel continued compliance with DSS oversight, made in her capacity as the final policymaker of Surry County DSS after the underlying legal proceeding had already been abandoned by her own agency, constitutes willful and wanton conduct and evidence of a custom or policy of misrepresentation to maintain control over families beyond the scope of lawful authority.

### E. Judicial Nullification (March 2, 2026)

54. On March 2, 2026, the Honorable William F. Southern III, District Court Judge, entered a Juvenile Order in File Nos. 25JA001086, 25JA001087, and 25JA001088 stating: "Based on the dismissal of the underlying Petitions (A, N, D)... the

undersigned District Court Judge hereby dissolves the nonsecure custody orders entered herein on 8/22/2025, granting nonsecure custody to the Surry County Department of Social Services. All prior orders of record in connection with the Juvenile Petitions are hereby declared null and void, and of no effect."

55. This Order, officially filed and stamped by the Clerk of Superior Court, Surry County, confirms that the nonsecure custody orders under which the children were held from August 22, 2025 through March 2, 2026—a period of approximately 192 days—were dissolved and declared of no legal effect. Plaintiffs do not contend that the subsequent nullification itself establishes the unconstitutionality of the original seizure. Rather, the judicial nullification is relevant to: (a) the good-faith reliance defense available to individual Defendants, which is substantially undermined by the documented pattern of conduct predating the order; (b) the duration and scope of damages sustained; and (c) the absence of any valid legal authority under which DSS administered medical treatment to F.C.W. after the petitions were dismissed.

56. Upon information and belief, Plaintiffs have identified additional families in Surry County who have experienced substantially similar conduct by Surry County DSS, including the coercive use of safety agreements under threat of child removal without an Unsafe classification. This information, developed through discovery, further evidences the existence of a widespread custom or practice for purposes of Monell liability.

## V. CLAIMS FOR RELIEF

## COUNT I
## FOURTH AMENDMENT — WARRANTLESS SEIZURE OF MINOR CHILDREN
(Plaintiff Dylan Whitesell, individually and as next friend of I.J.W., F.C.W., and E.W., against Defendant Sebastian)

57. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

58. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals against unreasonable seizures. Minor children possess Fourth Amendment rights against unreasonable seizure. The removal of a child from parental custody constitutes a seizure within the meaning of the Fourth Amendment.

59. A warrantless seizure of a child is constitutionally permissible only in the presence of exigent circumstances—specifically, where a governmental official has an objectively reasonable basis to believe the child faces immediate serious physical harm so urgent that there is no time to obtain prior judicial authorization. The Fourth Circuit applies this standard with equal force within this district. See also Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000) (persuasive authority recognizing that officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time

of the seizure provides reasonable cause to believe the child is in imminent danger of serious bodily harm).

60. On August 22, 2025, Defendant Sebastian removed I.J.W., F.C.W., and E.W. from the custody of their father, Plaintiff Dylan Whitesell, without a court order in existence at the time of removal. The order purportedly authorizing the removal was not signed until 11:40 PM—approximately three hours after removal and seven hours after Sebastian's arrival.

61. No exigent circumstances justified Defendant Sebastian's failure to obtain prior judicial authorization. The objective conduct of Defendant Sebastian on August 22, 2025 forecloses any exigency finding: (a) she did not remove the children upon arrival at 4:00 PM; (b) she did not seek judicial authorization during the four-plus hours she waited at the property; (c) a judge's designee was demonstrably reachable by telephone that evening, as shown by the 11:40 PM telephonic approval; (d) two safety assessments conducted over the preceding five months had classified the household as "Safe with a Plan," not "Unsafe"; and (e) two law enforcement officers present at the removal confirmed on body camera they were not there to execute a court order. Each of these facts is independently corroborated by documentary evidence.

62. Defendant Sebastian's conduct in removing the minor children without prior judicial authorization in the absence of exigent circumstances violated the clearly

established Fourth Amendment rights of Plaintiff Dylan Whitesell and his minor children. A reasonable social worker in Defendant Sebastian's position would have known that removing children without prior judicial authorization, in circumstances not constituting a genuine emergency, was unconstitutional.

63. As a direct and proximate result of Defendant Sebastian's unconstitutional conduct, Plaintiffs suffered the deprivation of familial association for approximately 192 days, the loss of irreplaceable developmental milestones, and severe and lasting emotional harm.

## COUNT II
## FOURTH AMENDMENT — WARRANTLESS SEARCH OF PRIVATE RESIDENCE
(Plaintiff Dylan Whitesell and Plaintiff Angela Volk against Defendant Sebastian)

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. The Fourth Amendment protects the right of persons to be secure in their homes against unreasonable searches. A warrantless search of a private home is presumptively unreasonable. The home receives the highest level of Fourth Amendment protection.

66. On August 22, 2025, between approximately 4:00 PM and 8:10 PM, Defendant Sebastian entered 169 Misty Creek Trail and searched the private bedrooms of Plaintiff Dylan Whitesell and the minor children. At the time of this search,

Defendant Sebastian possessed no search warrant, no court order authorizing entry or search, and no consent from Plaintiff Dylan Whitesell, who was absent from the property and had no knowledge of Sebastian's presence.

67. Entry to the property was obtained through the consent of a third-party occupant. A third party's consent to entry does not authorize the warrantless search of a physically absent resident's private quarters. Georgia v. Randolph, 547 U.S. 103 (2006). The private bedroom of an absent resident is beyond the scope of any authority that a third party can grant.

68. Any evidence gathered during this warrantless search is tainted and subject to exclusion as fruit of the poisonous tree. To the extent any information obtained during the warrantless search was incorporated into the subsequently filed Juvenile Petition or any supporting affidavit, those filings were themselves tainted by the constitutional violation.

69. Defendant Sebastian's warrantless search of Plaintiffs' private residence violated clearly established Fourth Amendment law. A reasonable social worker would have known that searching the private bedrooms of an absent resident without a warrant, court order, or that resident's consent was unconstitutional.

70. As a direct and proximate result of Defendant Sebastian's unconstitutional search, Plaintiffs suffered violations of their constitutional rights, invasion of their most

private spaces, and the use of information gathered in violation of the Constitution to support subsequent legal proceedings against them.

## COUNT III
## FOURTEENTH AMENDMENT — SUBSTANTIVE DUE PROCESS
## COERCED DEPRIVATION OF FAMILIAL INTEGRITY
(All Plaintiffs against Defendant Shatley)

71. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72. The Fourteenth Amendment's Due Process Clause protects fundamental liberty interests, including the right of parents to the care, custody, and control of their children, and the right of family members to live together free from unwarranted government interference. Troxel v. Granville, 530 U.S. 57 (2000); Moore v. City of East Cleveland, 431 U.S. 494 (1977).

73. On March 22, 2025, and again on or about April 14, 2025, Defendant Shatley presented Plaintiffs with Temporary Parental Safety Agreements and explicitly informed them that if they did not sign, their children would be immediately placed in foster care.

74. These threats were made notwithstanding that Defendant Shatley's own completed safety assessments had not classified the household as "Unsafe" and had not recommended removal. No judicial authorization for removal existed. The threat

of removal was itself without valid legal basis—it was an extrajudicial coercive threat designed to compel signature on agreements legally designated as voluntary.

75. The TSPAs imposed conditions that effectively displaced Plaintiffs from their family home, rendered them homeless, separated them from their children except during supervised visits, and subjected the family's living arrangements to ongoing DSS oversight and control—all without judicial process and all purportedly on a "voluntary" basis that was in reality coerced.

76. Consent obtained through an explicit governmental threat to take a parent's children without legal authority to do so is not legally valid consent. The resulting agreements cannot provide constitutional justification for the deprivations that followed. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Doe v. Heck, 327 F.3d 492 (7th Cir. 2003).

77. Defendant Shatley's conduct deprived Plaintiffs of their fundamental liberty interest in familial integrity without due process of law. As a direct and proximate result, Plaintiffs were rendered homeless, separated from their children, and caused severe and lasting emotional harm.

## COUNT IV
## FOURTEENTH AMENDMENT — PROCEDURAL DUE PROCESS
(All Plaintiffs against Defendants Sebastian and Shatley)

78. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

79. The Fourteenth Amendment requires that before the government deprives a person of a fundamental liberty interest, it must provide constitutionally adequate process. Where removal of children from parental custody is sought outside of a genuine emergency, pre-deprivation judicial process is required.

80. Defendants Sebastian and Shatley deprived Plaintiffs of their liberty interest in family integrity through coerced agreements obtained without judicial process, and through physical removal of the children without a pre-existing court order, without adequate process, and in circumstances not constituting a genuine exigency.

81. The BOLO and Missing Child Report threats made at approximately 6:19 PM on August 22, 2025—while Plaintiff was engaged in a routine family activity and unreachable by telephone—created the appearance of urgency in circumstances that had not involved any emergency during the four-plus hours Sebastian had already been present at the property. The characterization of a father fishing with his own children as flight from authorities, made without any court order and without documentation of exigent circumstances, was used to support an asserted emergency basis for pre-order removal.

82. As a direct and proximate result of Defendants' procedural due process violations, Plaintiffs were deprived of their children for approximately 192 days under orders subsequently declared null and void.

**COUNT V**
**MONELL MUNICIPAL LIABILITY — CUSTOM, POLICY, AND PRACTICE POLICYMAKER CONDUCT**
(All Plaintiffs against Defendant Surry County)

83. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

84. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under § 1983 when a constitutional violation results from an official policy, a widespread custom or practice, or the deliberate decisions of a final policymaker.

85. Defendant Sharon Schueneman, as Director of Surry County DSS, is a final policymaker for the county with respect to child welfare decisions and DSS operations. Her deliberate decisions and official acts constitute county policy for Monell purposes, and municipal liability attaches to Surry County accordingly.

86. Director Schueneman's written apology of February 2, 2026, sent from her official county government email address in direct response to a formal grievance documenting the specific constitutional violations alleged herein, constitutes a

policymaker-level acknowledgment that the conduct of Surry County DSS employees in this case fell below lawful standards.

87. Director Schueneman's February 26, 2026 email asserting that services were "court ordered"—made two days after her agency had voluntarily dismissed the underlying petition and in direct response to Plaintiff's documented declination of voluntary services—constitutes a deliberate misrepresentation of judicial authority by a final policymaker. This misrepresentation was made for the purpose of compelling continued compliance with DSS oversight in the absence of any valid court order, and its consequences are borne by Surry County as the governmental entity whose final policymaker engaged in that conduct.

88. The pattern of conduct documented herein—including the use of coercive threats to obtain purportedly voluntary safety agreements, the removal of children without prior judicial authorization, the misrepresentation of legal authority to compel compliance, and the administration of unauthorized medical treatment—reflects a custom or practice of Surry County DSS that policymakers knew about or should have known about and failed to correct.

89. Upon information and belief, Plaintiffs have identified additional families in Surry County who have experienced similar conduct by Surry County DSS, including the coercive use of safety agreements under threat of child removal without an

Unsafe classification. This further evidences the existence of a widespread custom or practice.

90. Surry County's liability is also established through its deliberate indifference to the constitutional rights of families involved with DSS. *City of Canton v. Harris*, 489 U.S. 378 (1989). The county failed to implement adequate training, supervision, and corrective measures to prevent the pattern of constitutional violations documented herein, despite having constructive and actual notice through federal administrative complaints filed during the active custody period, formal grievances submitted to the Director, and the Director's own acknowledgment of misconduct.

91. As a direct and proximate result of Surry County's policies, customs, practices, and policymaker conduct, Plaintiffs suffered the constitutional violations and damages described herein.

## COUNT VI
## SUPERVISORY LIABILITY
(All Plaintiffs against Defendant Schueneman in her Individual Capacity)

92. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

93. A supervisor may be held individually liable under § 1983 where the supervisor knew of and acquiesced in the constitutional violations of subordinates, or where the supervisor's own conduct directly caused the constitutional deprivation.

94. Director Schueneman had actual notice of the constitutional violations alleged herein through formal grievances filed by Plaintiff on December 15, 2025, and through the federal administrative complaints filed with the HHS Office for Civil Rights and the DOJ Civil Rights Division during the active custody period. Despite this notice, Director Schueneman failed to take adequate corrective action to remedy the ongoing deprivation.

95. Director Schueneman's own February 26, 2026 email—misrepresenting that services were "court ordered" after the petition had been dismissed—constitutes supervisory conduct that directly caused ongoing harm to Plaintiffs by falsely prolonging the apparent authority of DSS over the family beyond the termination of legal proceedings.

96. As a direct and proximate result of Defendant Schueneman's supervisory failures and affirmative misconduct, Plaintiffs suffered continued deprivation of their constitutional rights and the damages described herein.

**COUNT VII**
**FOURTEENTH AMENDMENT — VIOLATION OF PARENTAL RIGHT TO DIRECT MEDICAL CARE**

## UNAUTHORIZED MEDICAL TREATMENT AS CONSEQUENTIAL DAMAGE OF UNCONSTITUTIONAL REMOVAL

(Minor Plaintiff F.C.W., by next friend Dylan Whitesell, against Defendants Surry County, Schueneman, and Sebastian)

97. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98. The Fourteenth Amendment protects a parent's fundamental liberty interest in making medical decisions for their minor child. Parham v. J.R., 442 U.S. 584 (1979). Government actors who, through unconstitutional conduct, cause a minor child to be placed in circumstances where unauthorized medical treatment is administered over a parent's documented objection violate that parent's constitutionally protected rights and are liable for the resulting medical harm as a proximate consequence of the initial constitutional violation.

99. Surry County DSS, through the unconstitutional removal of minor F.C.W. on August 22, 2025, placed F.C.W. in a foster care arrangement under the purported authority of a nonsecure custody order subsequently declared null and void. DSS thereby created the sole circumstance under which third-party providers could claim authority to make medical decisions for F.C.W. over his father's objection. But for the unconstitutional removal, no third party would have had any opportunity or claimed authority to administer medical treatment to F.C.W.

100. During the period of DSS custody, Plaintiff Dylan Whitesell documented and communicated his objection to the polypharmacy regimen being administered to

his son. His objections were overridden by persons acting under the authority DSS purported to hold. The medical records list "Kim King"—the foster placement caretaker—as "Legal Guardian" of F.C.W. despite her having no biological, adoptive, or court-appointed legal guardian status. Her purported authority to consent to F.C.W.'s medical treatment derived solely and entirely from the DSS custody arrangement—custody subsequently declared null and void.

101. The concurrent administration of aripiprazole (Abilify) and risperidone to minor F.C.W. constituted intraclass polypharmacy in violation of North Carolina Medicaid Clinical Coverage Policy D-AKIDS. This treatment was administered under a grant of authority that was legally nonexistent. DSS, as the entity that created the custodial arrangement, is the proximate cause of the medical harm that arrangement enabled.

102. The neurological risk associated with concurrent antipsychotic administration to a developing minor, and the documented psychological harm—including trauma diagnosis, separation anxiety, and major depressive disorder arising during the period of DSS custody—constitute documentable harm flowing directly and proximately from DSS's unconstitutional seizure. These harms are properly recoverable as consequential damages of the constitutional violations alleged herein. To the extent any element of medical causation requires expert opinion, Plaintiffs reserve the right to present such testimony at trial.

103. As a direct and proximate result of Defendants' unconstitutional conduct, minor F.C.W. sustained neurological risk from intraclass polypharmacy administered in violation of applicable Medicaid policy, documented psychological diagnoses attributable to the onset of DSS involvement, and the deprivation of his father's constitutionally protected right to direct his medical care during a critical developmental period.

## COUNT VIII
## VIOLATION OF CONSTITUTIONAL RIGHT TO TRAVEL
(Plaintiffs Dylan Whitesell and Angela Volk against Defendant Shatley)

104. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

105. The constitutional right to travel—including the right to relocate and move freely within and between states—is a fundamental right protected under the Constitution. Shapiro v. Thompson, 394 U.S. 618 (1969); Saenz v. Roe, 526 U.S. 489 (1999). Government actors may not impose extrajudicial restrictions on a person's right to travel without judicial authorization.

106. During the period of the coerced safety agreements, Defendant Shatley explicitly threatened Plaintiffs that if they relocated outside of Surry County, they would forfeit their children. This threat was communicated in connection with the imposition and enforcement of the Temporary Parental Safety Agreements beginning March 22, 2025. It was made without any court order restricting

Plaintiffs' geographic location and without any judicial determination that such a restriction was warranted.

107. This extrajudicial threat to restrict Plaintiffs' constitutional right to travel, imposed without judicial process and enforced through the coercive threat of child removal, constitutes an unconstitutional deprivation of a fundamental right under color of state law.

108. As a direct and proximate result of this unconstitutional restriction, Plaintiffs were confined to Surry County against their will, unable to seek employment, housing, or family support that might have been available elsewhere, and sustained damages including continued homelessness and financial hardship.

## COUNT IX
## FABRICATION OF EVIDENCE IN VIOLATION OF THE
## FOURTH AND FOURTEENTH AMENDMENTS
(All Plaintiffs against Defendant Sebastian)

109. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

110. It is clearly established that a government official who deliberately or recklessly includes a materially false statement, or omits material exculpatory information, in a sworn affidavit submitted to obtain or support judicial authorization violates the Fourth Amendment. Franks v. Delaware, 438 U.S. 154 (1978). It is equally established that a state actor who misrepresents evidence to a judicial tribunal to

deprive a person of a constitutionally protected liberty interest violates the Fourteenth Amendment's guarantee of due process.

111. On August 25, 2025, Defendant Sebastian executed a sworn Affidavit as to Status of Minor Child in connection with the Juvenile Petition filed in File No. 25JA001087-850. This affidavit characterized Plaintiff Angela Volk's recorded statement as an admission that she had struck a juvenile's sibling with a broom handle, while omitting Volk's express denial—"I didn't do it"—contained within the same recorded statement and the coercive context in which the statement was made.

112. The omitted denial was material. A petition affidavit that accurately reproduced Volk's complete statement—including the express denial and the rhetorical context—would not have supported characterization of the statement as an affirmative admission of physical abuse. The selective omission of exculpatory content from a recorded statement, for purposes of a sworn judicial filing, constitutes a material misrepresentation by omission within the meaning of Franks v. Delaware.

113. Defendant Sebastian, acting under color of state law, deliberately or recklessly omitted the exculpatory portions of Plaintiff Volk's recorded statement from her sworn affidavit, with knowledge that the resulting characterization would be used

to support judicial action depriving Plaintiffs of their constitutionally protected familial association.

114. Upon information and belief, the recording of Plaintiff Volk's complete statement was in DSS's possession at the time the petition was filed and remains in DSS's possession. Plaintiffs have issued a litigation hold demand for this recording. Its production in discovery will establish the material discrepancy between what Volk actually said and how Sebastian characterized it in a sworn filing.

115. As a direct and proximate result of Defendant Sebastian's material misrepresentation by omission in a sworn judicial filing, the Juvenile Petition was supported by a distorted characterization of recorded evidence, the nonsecure custody orders were obtained and maintained in part on the basis of that misrepresentation, and Plaintiffs were deprived of familial association for approximately 192 days in reliance upon proceedings tainted by constitutional violation.

116. As a direct and proximate result of this conduct, Plaintiffs suffered the deprivation of familial association, severe emotional distress, and all damages flowing from the prolonged unconstitutional custody.

**COUNT X**
**MEDICAL BATTERY**
**(N.C. Common Law)**

(Minor Plaintiff F.C.W., by next friend Dylan Whitesell, against Defendants Surry County, Schueneman, and Sebastian)

117. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

118. Under North Carolina common law, a battery consists of an unconsented harmful or offensive touching of another person. The administration of prescription medication to a minor child without the valid consent of the child's legal parent or guardian constitutes battery as to each act of administration.

119. Plaintiff Dylan Whitesell is the biological father and legal parent of minor F.C.W. His right to direct the medical care of his minor child is both constitutionally and legally protected. During the period of DSS custody from August 22, 2025 through March 2, 2026, Plaintiff Dylan Whitesell documented and communicated his objection to the psychotropic medication regimen being administered to F.C.W. Those objections were overridden.

120. The individual identified in F.C.W.'s medical records as "Kim King, Legal Guardian" is, upon information and belief, the foster placement caretaker. She held no biological, adoptive, or court-appointed legal guardian status over F.C.W. Her purported authority to consent to F.C.W.'s medical treatment derived solely and entirely from Surry County DSS's custodial arrangement—an arrangement subsequently declared null and void by the Honorable William F. Southern III on March 2, 2026.

121. Because the custody order was declared null and void and of no effect, no valid consent to F.C.W.'s medical treatment was ever obtained from a person with lawful authority to provide it. Each administration of psychotropic medication to F.C.W. over his father's documented objection and under the authority of void custody constitutes an unconsented touching—a battery under North Carolina common law. The concurrent administration of aripiprazole (Abilify) and risperidone in violation of North Carolina Medicaid Clinical Coverage Policy D-AKIDS reflects willful and wanton disregard for F.C.W.'s safety and health. Where willful and wanton conduct is established, the damages limitation of N.C.G.S. § 90-21.19(b) does not apply.

122. Defendant Surry County is liable for the batteries described herein under the doctrine of respondeat superior, as the governmental entity whose employees and authorized agents, acting within the scope of their official functions, created and maintained the custodial arrangement under which the unconsented medical treatment was administered. Defendants Schueneman and Sebastian are liable in their individual capacities as the policymaker and initiating actor, respectively, whose unconstitutional conduct created the sole circumstance under which unauthorized medical treatment could be administered to F.C.W. over his father's objection.

123. As a direct and proximate result of the batteries described herein, minor F.C.W. sustained neurological risk associated with intraclass polypharmacy administered

during a critical developmental period, documented psychological diagnoses attributable to the period of DSS involvement, and all general and special damages flowing from the unauthorized medical treatment.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (N.C. Common Law)
(Plaintiffs Dylan Whitesell and Angela Volk against Defendants Sebastian, Shatley, and Schueneman, individually)

124. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

125. Under North Carolina common law, intentional infliction of emotional distress requires: (1) extreme and outrageous conduct; (2) which is intended to cause, or is carried out with reckless disregard of the probability that it will cause, severe emotional distress; and (3) which does in fact cause severe emotional distress. Dickens v. Puryear, 302 N.C. 437 (1981).

126. The conduct of Defendants, individually and collectively, constitutes extreme and outrageous conduct exceeding all bounds usually tolerated in a civilized society, including: (a) the issuance of a BOLO and Missing Child Report falsely characterizing a father engaged in a routine family activity as a fleeing subject, used to create the appearance of emergency where none existed; (b) the submission of a sworn judicial affidavit containing a materially false

characterization of a recorded statement while deliberately omitting the speaker's express denial; (c) the deliberate misrepresentation of judicial authority by the Director of a government agency after the underlying legal proceedings had been voluntarily dismissed by her own agency, for the purpose of compelling continued compliance; and (d) the imposition of coercive safety agreements under explicit threat of immediate child removal, which directly caused the homelessness of Plaintiffs and their separation from their minor children.

127. This conduct was intentional or, at minimum, carried out with reckless disregard of the probability that it would cause severe emotional distress to Plaintiffs.

128. As a direct and proximate result of the extreme and outrageous conduct of Defendants, Plaintiffs Dylan Whitesell and Angela Volk suffered severe emotional distress, including anxiety, depression, trauma, and psychological harm, the full extent of which will be established at trial.

## VI. DAMAGES

129. As a direct and proximate result of the constitutional and state law violations alleged herein, Plaintiffs have sustained the following damages, the full extent of which will be established at trial:

130. Loss of Familial Association: Plaintiff Dylan Whitesell was deprived of the companionship, society, and association of his three minor children for approximately 192 days. This includes the irreplaceable loss of infant I.J.W.'s first

steps, first words, and first birthday—developmental milestones that cannot be recovered or compensated by traditional reunification services and which constitute permanent, irreparable loss of a unique period of human life.

131. Homelessness and Economic Harm: Plaintiffs Dylan Whitesell and Angela Volk were rendered homeless from approximately March 22, 2025 through the beginning of summer 2025 as a direct and proximate result of the coerced safety agreements. They sustained economic losses including housing costs, loss of professional employment and associated employee benefits, lost opportunities, and related financial hardship.

132. Severe Emotional and Psychological Harm: All Plaintiffs sustained severe emotional distress, anxiety, depression, and psychological harm as a result of the family separation, coercive conduct, and constitutional violations described herein.

133. Medical Harm to Minor F.C.W.: Minor F.C.W. was subjected to a high-risk polypharmacy regimen over his father's documented objection, including concurrent antipsychotic medications in violation of applicable Medicaid policy. He sustained neurological risk associated with intraclass polypharmacy administered during a critical developmental period, and documented psychological diagnoses—including trauma, separation anxiety, social anxiety, and major depressive disorder—attributable to the constitutional violations described herein.

134. Attachment and Developmental Harm to Minor Children: All three minor children sustained documented attachment disruption and developmental harm as a result of the repeated separations and reunifications caused by Defendants' conduct.

135. Punitive Damages: The conduct of the individual Defendants—particularly Defendant Sebastian's warrantless removal and warrantless search, the BOLO and Missing Child Report threats assigning an emergency characterization to a routine parental activity, the submission of a sworn affidavit containing a materially false statement, and Director Schueneman's deliberate misrepresentation of judicial authority after the case had been dismissed—reflects reckless and callous indifference to Plaintiffs' federally protected rights sufficient to support an award of punitive damages against the individual Defendants pursuant to Smith v. Wade, 461 U.S. 30 (1983).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally where applicable, and award the following relief:

1. Compensatory damages in an amount to be determined by the jury at trial, for all harms described herein including loss of familial association, emotional distress, economic harm, medical harm, and developmental harm to the minor children;

2. Punitive damages against the individual Defendants in their individual capacities for their reckless and callous indifference to Plaintiffs' federally protected constitutional rights;

3. Reservation of all rights available under 42 U.S.C. § 1988 with respect to reasonable attorney's fees and costs in the event Plaintiffs obtain counsel prior to judgment and prevail on their federal civil rights claims;

4. A declaration by this Court that the conduct of Defendants described herein violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and North Carolina common law;

5. Pre-judgment and post-judgment interest as permitted by law;

6. Such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

**Dylan Grey Whitesell**
Plaintiff, Pro Se
169 Misty Creek Trail
Ararat, North Carolina 27007
Telephone: (336) 399-5511
Email: dylangwhitesell@gmail.com
Date: 6-10-2026

**Angela Volk**
Plaintiff, Pro Se
537 Fisher Valley Road
Dobson, North Carolina 27017
Telephone: (336) 287-1138
Email: angelawhitesell2023@gmail.com
Date: 6-10-2026

## VERIFICATION OF DYLAN GREY WHITESELL

I, Dylan Grey Whitesell, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

**Dylan Grey Whitesell**
Date: __6-10-2026__


## VERIFICATION OF ANGELA VOLK

I, Angela Volk, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the allegations in the foregoing Complaint that pertain to facts within my personal knowledge are true and correct to the best of my knowledge, information, and belief.

**Angela Volk**
Date: __6-10-2026__